```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


Jennifer K. Moody,                  :

        Plaintiff,                  :

    v.                              :    Case No. 2:05-cv-0880

Honda of America Mfg., Inc.,        :    JUDGE SMITH

        Defendant.                  :
```

OPINION AND ORDER

Plaintiff, Jennifer K. Moody, filed this action against her former employer, Honda of America. She claims that Honda violated her rights under the Family and Medical Leave Act, 29 U.S.C. §§2601 *et seq.*, when it terminated her employment on August 12, 2005.

Both parties have filed motions to compel discovery. Honda wishes to discover additional information about Ms. Moody's medical conditions from 2002 forward, including information relating to her medical condition after the date of discharge. Ms. Moody seeks to discover information, which she believes to be in personnel files of other Honda employees, about whether Honda terminated other employees on grounds similar to those asserted in her case. For the following reasons, the Court concludes that each moving party is entitled to essentially all of the discovery which it has requested, and both motions to compel will be substantially granted.

I.

Ms. Moody's complaint provides the most significant factual background for the two discovery motions at issue. In her complaint, she alleges that she worked for Honda from 1990 until 2005. In 2005, she was granted intermittent FMLA leave due to

depression. Honda had also recognized her migraine headaches as a second serious health condition requiring intermittent leave.

Between July 27, 2005 and August 8, 2005, Ms. Moody missed a total of eight days of work. She claims that seven of these missed days were caused by her depression and that she missed one day because of a migraine headache. She alleges that, prior to this time, she had been threatened with discharge if she missed more than four days per month due to depression. She was discharged on August 12, 2005, a decision which was upheld by an internal review panel on August 18, 2005. She alleges that her use of FMLA leave was utilized by Honda as a negative factor in deciding to discharge her.

Honda, responding to discovery, has asserted that Ms. Moody was terminated for "accumulated gross misconduct and for misrepresentation and falsification in violation of HAM's policies." See Memorandum of Defendant Honda of America Manufacturing, Inc. in Opposition to Plaintiff's Motion to Compel the Production of Documents, Doc. #11, at 8. It is not clear exactly what falsification and misconduct Honda claims to have relied upon in making its decision. According to Ms. Moody, part of the basis for her discharge was the fact that she attended a gymnastic competition in New Orleans while she was off work due to depression. She claims that during that time, she was psychologically unable to work but was able to engage in "activities that made her happy while depressed" based upon her doctor's advice. See Plaintiff Jennifer K. Moody's Motion to Compel the Production of Documents, Doc. #10, at 3. The Court will assume, without the benefit of additional information, that Honda's decision was based at least in part upon its belief that Ms. Moody was not unable to work on some or all of the days she missed in July and August of 2005 due to a serious medical condition. It is with these facts in mind that the instant

motions will be decided.

                                II.

     Before beginning its analysis, the Court must address a dispute between the parties as to the proper characterization of Ms. Moody's claims.  Honda asserts that Ms. Moody has stated only a very specific type of FMLA claim in her complaint, an "interference claim" under 29 U.S.C. §2615(a)(1), and not a "retaliation" or "discrimination" claim under 29 U.S.C. §2615(a)(2).  According to Honda, because Ms. Moody has asserted only an interference (or entitlement) claim under §2615(a)(1), the discovery which she has requested is irrelevant.  Consequently, the Court will discuss briefly whether it agrees with Honda's characterization of the type of FMLA claim asserted by Ms. Moody or, more broadly, with Honda's assertion that FMLA claims may be neatly separated into two separate categories and that the Court must perform that analysis prior to determining what type of evidence parties may be entitled either to discover or to produce at trial in support of and in defense of such claims.

     The most recent Sixth Circuit decision discussing the types of claims available under the FMLA is Edgar v. JAC Products, 443 F.3d 501 (6th Cir. 2006).  In Edgar, the plaintiff's employment was allegedly terminated based upon the fact that she did not submit a medical form justifying her need for FMLA leave until after the date for return of that form which had been established by her employer (although there was a factual dispute about that date).  The district court granted summary judgment for the defendant not on grounds that the required form was turned in too late but that, even if the employer had granted the plaintiff the full twelve weeks of available leave, she would still have been discharged because she was not able to return to work until well after the leave period expired.  One of the questions presented

                                 3

on appeal was whether the employer was entitled to prove, either as a defense to Ms. Edgar's claim or as an issue relating to mitigation of damages, that she would have been unable to return to work even if the termination was itself improper.

In addressing the issue, the Court noted, as it had also noted in previous cases, see, e.g., Arban v. West Publishing Co., 345 F.3d 380 (6th Cir. 2003), that FMLA claims can be divided into at least two categories. The first, which the Court of Appeals referred to as either "entitlement" or "interference" claims, present the issue of whether an employee actually received the benefits to which the employee is entitled under the FMLA. For example, in a case where an employee asserts that he or she did not receive leave properly requested and substantiated under the FMLA, or was not reinstated after completing a proper FMLA legal absence, the employee has asserted a claim for interference with rights under the FMLA or a claim that his or her entitlement to such rights was not recognized by the employer. The Court of Appeals noted that the employer's intent is not a part of the inquiry to be made under an entitlement or interference claim, but also noted that the employee must be prejudiced by the employer's refusal to recognize the entitlement in order to prevail. Under this theory, the Court of Appeals held that it was relevant to the issue of liability to determine whether the employee could return to work after the expiration of FMLA leave. If not, the employee was not denied any benefit granted by the FMLA because an employee who is unable to return to work after the expiration of FMLA leave is not entitled to reinstatement.

The other type of claim discussed by the Edgar court is a retaliation or discrimination claim. There, the question is whether the employer meted out an adverse employment action based on a reason which is prohibited under the FMLA. For example, if

4

an employee's job is terminated because the employee exercised rights under the FMLA, a claim of retaliation or discrimination would be made out.  In such a case, the employer's intent is relevant.  Under that theory, the Court of Appeals concluded that whether Ms. Edgar was able to return to work after her FMLA leave would have expired was irrelevant to the issue of liability, because the question of her employer's intent was to be measured only based upon what the employer knew at the time, but that the extent of the relief to which she might be entitled for a violation would be impacted by whether she was able to return to work.  Thus, although Edgar does describe two different categories of FMLA claims, it analyzed Ms. Edgar's termination claim under both theories and concluded that under either, the employer was entitled to discover evidence concerning Ms. Edgar's medical condition above and beyond what was known to it at the time of the adverse job action.

    Ms. Moody's complaint does not describe her FMLA claim in the language used in Edgar nor does it cite to one or the other of §§2615(a)(1) or 2615(a)(2) in articulating her theory of recovery.  Rather, stripped to its essence, the complaint asserts that Ms. Moody was entitled to take FMLA leave for depression or for migraine headaches; that all of the leave which she took in late July and early August of 2005 was proper FMLA leave; and that she was nonetheless discharged based upon having taken that leave.  The question then becomes whether these facts support only an entitlement claim, only a discrimination claim, or both.

    In that regard, this Court's decision in Kitts v. General Telephone, 2005 WL 2277438 (S.D. Ohio September 19, 2005) (Holschuh, J.) is helpful.  Kitts involved an employee who was discharged for allegedly falsely reporting the circumstances surrounding her illness and the relationship between that illness and her absence from work.  Because the Court of Appeals appears

to recognize two different types of FMLA claims, Judge Holschuh proceeded to analyze the plaintiff's claim under both §2615(a)(1) and §2615(a)(2).  He concluded that the claim could either be an interference or entitlement claim because the plaintiff asserted that she was entitled to the absence in question under the FMLA and because the plaintiff asserted that she took appropriate FMLA leave and was then discharged, or discriminated against, because she exercised her FMLA rights.  Ultimately, because Judge Holschuh concluded that the plaintiff had been discharged not for taking FMLA leave but for falsification, he granted summary judgment for the defendant, but not before he analyzed both claims and specifically dealt with the issue of whether the reasons given by the employer for the discharge were merely a pretext for discriminating against its employee because of her exercise of rights under the FMLA.

    Ms. Moody, like the plaintiff in Kitts, has a claim that can be analyzed under either §2615(a)(1) or §2615(a)(2).  Clearly, Ms. Moody claims that she was entitled to take the leave which she did under the FMLA and that, to the extent that she lost her job because Honda concluded that she was not entitled to that leave, she was denied a benefit due to her under the Act.  Additionally, she clearly alleges in the complaint that she had been threatened in advance with discharge if she took more than four days of FMLA leave in any one month due to her depression.  She took a total of seven days leave within a two-week period of time allegedly due to depression, and she was discharged almost immediately thereafter.  Thus, she has also stated facts which, if true, could lead to recovery on grounds that Honda retaliated against her or discriminated against her because she exercised her rights under the FMLA.  Under this latter theory, Honda's real reason for the discharge - whether it was due to Ms. Moody's exercise of FMLA rights or whether it was because she engaged in

some type of disception or falsification - will be a factual issue, as it was in Kitts. Thus, to the extent that Honda bases any of its arguments on the assertion that Ms. Moody has pled only an entitlement or interference claim and not a retaliation claim, the Court rejects that characterization of the complaint and concludes that, at this stage of the litigation, Ms. Moody is deemed to be proceeding under both legal theories based upon the facts which she has alleged in the complaint.

III.

The Court turns next to the motion to compel filed by Honda. The specific relief requested by that motion is to compel Ms. Moody to authorize her health care providers to release her medical records directly to Honda. Although the Court will not grant that relief, it will direct that Ms. Moody produce certain medical records, and establish a procedure to be followed with respect to any medical records which she believes are not properly discoverable.

Turning first to the issue of medical releases, nothing in the Federal Rules of Civil Procedure appears to authorize a court to direct a party to litigation whose medical condition has been placed at issue to sign a medical release authorizing the opposing party to obtain medical records directly from that party's treating physician or other healthcare professional. This issue has been debated by a number of courts, and they have reached different conclusions with respect to whether that type of authority exists. Compare Clark v. Vega Wholesale, Inc., 181 F.R.D. 470 (D. Nev. 1998) and Neal v. Boulder, 142 F.R.D. 325 (D. Col. 1992) with Smith v. Logansport Community School Corp., 139 F.R.D. 637 (N.D. Ind. 1991) and Brown v. Eli Lilly & Co., 131 F.R.D. 176 (D. Neb. 1988). Those courts which have concluded that such an order may be made have noted that the party whose records are being requested has, by asserting a claim or defense,

7

waived any physician-patient privilege otherwise present, and that the most expeditious and most efficient way for the opposing party to obtain pertinent medical records is to have a release executed and obtain the records directly from the treating health care provider.  Those courts which have reached the opposite conclusion have noted that, although the privilege may be waived as to certain medical conditions, it may not be as to others, and that allowing direct communication between the health care provider and the opposing party represents a real risk that privileged communications will be disclosed without the knowledge of the party whose medical condition is at issue.  Further, those latter courts note that there is no express authority under the Rules of Civil Procedure for such an order.  They conclude that the documents may be obtained through a Rule 34 request if the documents are considered to be under the control of the party whose medical condition is at issue, and must then be obtained by that party and produced for inspection and copying like any other document in that party's possession.  Alternatively, if the documents are not deemed to be under that party's control, they may be obtained only by way of the issuance of a subpoena pursuant to Rule 45.

    This Court concludes that the latter decisions represent the better-reasoned view.  Medical records in the hands of a health care provider, while not technically in the possession of a party who has placed his or her medical condition at issue, are within the control of that party because the party can compel the medical provider to release them.  Consequently, they should be treated just like any other document which is requested under Rule 34.  A Rule 34 request obligates the party to whom it is directed to produce those documents which are responsive, but also permits the party to review the documents requested, to determine that certain documents are either not responsive, are

irrelevant, or are privileged, and to withhold any documents falling into the latter two categories so long as it is made clear that documents have been withheld.  If a privilege exists, the responding party must assert the appropriate privilege and prepare a log if required.  Medical records are no different from other documents requested under Rule 34, and the Court will therefore not compel Ms. Moody to execute a medical release.

On the other hand, Ms. Moody has objected generally to the production of any medical records, contending that once Honda accepted the proposition that either her migraine headaches or depression were serious medical conditions, it was not entitled to additional medical information concerning those conditions either during the course of her employment or as part of the discovery in this case.  For reasons more fully described in this Court's decision in <u>Barnhouse v. Honda of America</u>, Case No. 2:04-cv-987 (September 21, 2005), this court rejects that argument. Regardless of whether the medical opinions issued during the course of Ms. Moody's employment are binding on the question of whether either of her two conditions is a serious medical condition for FMLA purposes, Honda's request for discovery is relevant for many reasons other than to contest that issue.  The Court leaves it to the trial judge to determine whether, if Honda chooses to contest that issue at trial, it is entitled to do so. For discovery purposes, however, information about both the medical conditions which were certified as serious, and other medical conditions which Ms. Moody may have suffered from, are relevant on other issues.

As the Court noted in <u>Barnhouse</u>, it is often the case (as it appears to be here) that an employer's litigation position is not that the condition from which the employee suffered is not a qualifying condition under the FMLA, but whether the particular absences taken stem from that medical condition, from some other

9

condition which was not "serious," or from no medical condition at all.  In this case, the parties appear to contest whether the leave which Ms. Moody took in July and August of 2005 resulted from her depressive disorder, and may also dispute whether her condition on the days in question was sufficiently serious that it precluded her from working.  Honda does not need to contest the seriousness of her medical condition as grounds for granting intermittent FMLA leave in order to argue that her condition was not the motivating factor for the leave which she took or that her condition was not sufficiently serious on the days in question to prevent her from having worked.  Further, such an issue cannot be determined in a vacuum.  Information about the course and history of her depressive illness both before and after the days in question is relevant, at least for discovery purposes, to determine whether the illness was sufficiently serious on those days to justify her request for medical leave.

    Additionally, Ms. Moody has made a claim in this case for back pay, benefits, front pay, and reinstatement.  As the <u>Edgar</u> decision points out, although, in a discrimination case, evidence concerning the employee's medical ability to continue to work may not be relevant to the issue of whether the employer violated the FMLA, it may be relevant to the scope and extent of relief available to the employee.  Here, if Ms. Moody's medical conditions worsened after her discharge to the point where she could no longer work at all, that would have an impact on her claims for back pay, front pay, and reinstatement.  Consequently, information about whether she has suffered from a disabling medical condition anytime subsequent to her discharge is discoverable.

    Honda has asked for all medical information concerning Ms. Moody going back to 2002.  The Court concludes that such a long time period is not reasonably calculated to lead to the discovery

of relevant evidence.  The events in this case took place in 2005.  Consequently, Honda is entitled only to discovery relating to Ms. Moody's 2005 medical condition and for a reasonable period of time before that, which the Court deems to be roughly 18 months, or to the beginning of 2004.  Further, there may well be evidence in Ms. Moody's medical records which relates not to either of her FMLA conditions nor any other potentially disabling condition nor to anything which occurred either in July or August of 2005 or thereafter.  If that is so, Honda would not be entitled to that information.  Consequently, the Court will order Ms. Moody to obtain medical records from any healthcare professional who provided treatment to her from January 1, 2004 to present, and to produce those records which are relevant in accordance with this order.  With respect to any medical records withheld, she shall either produce them for a counsel's-eyes-only inspection to determine if counsel for Honda will take the position that those records are also discoverable, or she may produce them to the Court for an *in camera* inspection.

IV.

The Court now addresses Ms. Moody's motion to compel.  She has asserted that she is entitled to personnel files of other Honda employees who were discharged for purportedly the same reason that motivated her discharge in order for her to determine whether Honda's purported reasons for her discharge were a pretext for discrimination under the FMLA.  Honda's primary response is that Ms. Moody has not asserted a discrimination charge and its intent is therefore irrelevant.  Honda also contends that personnel files routinely contain many privileged matters and that the Court should not order a wholesale production of those documents.

The Court has already determined that the facts alleged in the complaint may support a discrimination claim under the FMLA.

11

Therefore, at this point in the case, the discovery of information concerning other similarly-situated employees is reasonably calculated to lead to the discovery of admissible evidence.  This information may or may not, however, be contained in personnel files.  The Court agrees that a request for personnel files is overbroad and that such files may contain a variety of information which is both personal to the employees whose files are requested and which is irrelevant to the litigation at hand.  Consequently, the Court will grant Ms. Moody's request in a modified form.

Ms. Moody was discharged in August, 2005.  Honda shall produce discharge records relating to any other employees who were discharged for an alleged violation of Honda's falsification policies from January 1, 2004 to the present, whether or not such documents are contained in personnel files.  Such documents should include any written complaints, written records of discipline, and other written records created in the course of Honda's investigation of whether the employee violated the policies and its justification of any discipline imposed.

V.

Based on the foregoing, the motions to compel (#s 9 and 10) are granted as set forth above.  Each party shall provide the relevant documents to the other within 30 days.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set

aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge